**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

| | | |
|---|---|---|
| Steven Arkin, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 8:19-CV-1723-T-36TGW |
| | ) | |
| Smith Medical Partners, LLC | ) | Hon. Charlene Honeywell |
| and H. D. Smith, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| **consolidated with** | ) | |
| | ) | |
| William D. Sawyer, M.D., Pressman, Inc., et al. | ) | |
| v. Smith Medical Partners, LLC and H. D. | ) | |
| Smith, LLC, No. 8:19-cv-02410-CEH | ) | |

**PLAINTIFF PRESSMAN, INC.'S RENEWED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
AND CERTIFICATION OF SETTLEMENT CLASS**

Submitted by:

Phillip A. Bock
Robert M. Hatch
Tod A. Lewis
Jonathan B. Piper
BOCK, HATCH, LEWIS & OPPENHEIM LLC
134 N. La Salle Street, Suite 1000
Chicago, IL 60602
Telephone: 312/658-5500

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................ 1

    I.     The failed *Arkin* settlement. .................................................................. 1

    II.    Plaintiff reaches a settlement with Smith................................................ 2

BACKGROUND ................................................................................................ 3

    I.     The *Arkin* case...................................................................................... 3

    II.    The *Arkin* settlement travels to Illinois state court. ............................. 4

    III.   The evidence of Smith's faxing to the Settlement Class. ....................... 8

    IV.   The terms of Plaintiff's settlement with Smith....................................... 9

ARGUMENT..................................................................................................... 11

    I.     The settlement is within the range of reasonableness, meets all Rule 23 (e) requirements, and warrants preliminary approval and notice to the Settlement Class............................................................................ 11

         A.    The class representative and class counsel have adequately represented the Settlement Class. ............................................ 13

         B.    The settlement was negotiated at arm's length. ........................ 14

         C.    The relief provided for the Settlement Class is adequate. ........ 15

             1.    The costs, risks, and delay of trial and appeal. ............ 15

             2.    The effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims.................................................................... 18

             3.    The terms of any proposed award of attorney's fees, including timing of payment costs, risks, and delay of trial and appeal. .................................................................... 19

             4.    There is no agreement required to be identified under Rule 23(e)(3); no agreement other than the Settlement Agreement...... 19

         D.    The settlement treats class members equitably relative to each other. ..... 19

    II.    The Court should certify the proposed Settlement Class for settlement purposes only. ........................................................................ 20

         A.    Plaintiff has standing................................................................ 20

         B.    The requirements of Fed. R. Civ. P. 23(a)(1)-(4) are satisfied. ................ 21

             1.    Numerosity...................................................................... 21

             2.    Commonality.................................................................... 22

             3.    Typicality ........................................................................ 22

             4.    Adequacy of Representation ............................................ 22

C.    The requirements of Fed. R. Civ. P. 23(b)(3) are satisfied. ...................... 23

    1.    Common questions predominate. .................................................. 23

    2.    Class treatment of these claims is superior. ................................. 23

III.    Plaintiff requests that the Court order notice to the Settlement Class. ................ 23

IV.    The Court should schedule a final approval hearing. ........................................... 25

V.    The Court should stay this action and enjoin related lawsuits. ............................ 25

CONCLUSION .......................................................................................................................... 25

Pressman, Inc. ("Plaintiff"), individually and as the representative of the proposed Settlement Class, moves pursuant to Fed. R. Civ. P. 23 (e) for preliminary approval of the parties' Settlement Agreement, for certification of the Settlement Class for settlement purposes only, and for the scheduling of dates to notify the Settlement Class, for class members to submit claims, opt out, or object, and for a final approval hearing. A copy of the Settlement Agreement is attached as **Exhibit A**. The proposed Preliminary Approval Order is attached as **Exhibit B**. Pursuant to Local Rule 3.01(g), undersigned counsel certifies that moving counsel have conferred with the other counsel in the consolidated litigation and: (1) counsel for Defendants agree on the resolution of this motion; and (2) counsel for plaintiffs Arkin and Sawyer do **not** agree on the resolution of the motion.

## INTRODUCTION

Plaintiff's Class Action Complaint alleges that defendants Smith Medical Partners, LLC and H.D. Smith, LLC (collectively, "Smith") sent unsolicited advertisements by facsimile to Plaintiff and others in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"). Plaintiff and Smith have agreed to the terms of a class-wide settlement that provides immediate, substantial, and concrete monetary relief for the Settlement Class. The settlement creates a non-reversionary $4,500,000 Settlement Fund, which will be divided on a claims-made, per-fax-number basis among all class members who submit a valid Claim Form, after deductions for the costs of class notice, settlement administration, and the amounts the Court awards for attorney's fees, expenses, and Plaintiff's incentive award. **Exhibit A**.

## I.    The failed *Arkin* settlement.

Plaintiff's settlement picks up the pieces of a settlement that plaintiff Steven Arkin ("Arkin") proposed last year in a prior action against Smith. The parties to that case, *Arkin v. Smith Medical Partners, LLC, et al.*, 8:17-cv-02233-CEH-AEP (M.D. Fla.) (herein, "*Arkin I*"),

litigated in this Court for a year, attended a private mediation, and reached a proposed class settlement. Rather than present the settlement for approval by this Court, Arkin voluntarily dismissed the case and re-filed it in Illinois state court (herein, *Arkin 2*). Arkin's settlement fund was "reversionary," so class members could submit claims capped at $493.92 each and Arkin's counsel would receive $7 million in fees, but only those persons who submitted claims would be paid and Smith would keep all unclaimed funds.

After receiving notice of the *Arkin* settlement, Plaintiff filed an objection. Arkin's counsel sought final approval. In its brief, Arkin stated that just 1,660 class members had submitted claims—a 3.9% claims rate—meaning the class would be paid less than $820,000. A unique provision of the *Arkin* settlement agreement allowed any party to cancel the settlement prior to the final approval hearing; and, if it were canceled, required Arkin to voluntarily dismiss *Arkin 2* and re-file the case in this Court. Smith exercised the cancellation option and *Arkin 2* was voluntarily dismissed. On July 12, 2019, Arkin filed his third action here, *Arkin 3*.

## II.     Plaintiff reaches a settlement with Smith.

On June 13, 2019, Plaintiff filed this class action in Illinois state court, where *Arkin 2* was pending. Smith is based in Illinois, but removed the case to the U.S. District Court for the Northern District of Illinois on July 19, 2019, invoking federal question jurisdiction. On August 30, 2019, that court consolidated Plaintiff's action, without objection, with *Sawyer v. H. D. Smith, et al.*, 19-cv-03803 (ND IL), a class action against Smith filed 6 days before Pressman's. Pressman, N.D. IL ECF 17. Then, on September 26, 2019, by agreement of all parties, the consolidated actions were transferred to this Court and, on December 18, 2019, consolidated with *Arkin 3*. ECF 30 and 60.

In the months following the cancellation of the *Arkin* settlement, Plaintiff and Smith have negotiated toward a class settlement that will increase the money paid to class members by

2

creating a *non-reversionary*, lump sum settlement fund of $4,500,000. From that, Plaintiff's attorneys will request 25% in attorney's fees, a $15,000 incentive award for Plaintiff (the same incentive award Arkin requested in his canceled settlement), and expenses and settlement administration costs (totaling approximately $110,000), leaving $3,250,000 to be distributed *pro rata* among class members who submit claims. That is nearly four times the $820,000 that would have been paid to claimants in the *Arkin* settlement. Moreover, the claims submitted in the *Arkin* settlement will be honored here, without requiring resubmission, so those class members will be paid, and everyone else will get another chance to participate. No money will revert to Smith.

## BACKGROUND

### I.     The *Arkin* case.

On September 26, 2017, Steven Arkin filed an action against Smith in this Court captioned *Arkin v. Smith Medical Partners, LLC, et al.*, 8:17-cv-02233-CEH-AEP (M.D. Fla.) (*"Arkin 1"*). On April 3, 2018, Smith filed an amended answer and raised affirmative defenses, including that: (1) "Plaintiff and putative class members consented to receive faxes by providing prior express invitation or permission"; (2) "[t]he alleged faxes were transactional communications and not 'advertisements' under the Telephone Consumer Protection Act"; (3) "[t]he alleged faxes were informational communications and not 'advertisements' under the Telephone Consumer Protection Act"; and (4) "the claims of Plaintiff and purported class members are barred by the applicable Statute of Limitations." *Arkin 1* Doc. 46 at ¶¶ 18-20.

On February 9, 2018, the Court entered its initial scheduling order, closing class discovery on June 20, 2018. *Arkin 1*, Doc. 35. On June 25, 2018, the Court extended the class certification discovery deadline to September 7, 2018. *Arkin 1*, Doc. 73.

The case proceeded to written discovery. Smith moved for a protective order and Arkin moved to compel production. Docs. 52, 56, 59, 60, 65. At issue were various documents related

to Smith's fax broadcasts, including correspondence and customer agreements. Smith submitted a declaration by its marketing director, Blair Austin, who testified that while "some [faxes] were sent for promotional purposes, the vast majority would have been comprised of customer invoices and other account information, vendor purchase orders, and other informational and transactional material, although some may have included promotional language about products that Defendants offer for sale." *Id.*, ¶ 6. Ms. Austin also testified that "[m]ost campaigns were sent to customers, while others were transmitted to both customers and prospects." *Id.*, ¶ 7.

Following two hearings (*Arkin 1*, Docs. 67, 77), Magistrate Judge Porcelli ordered that Smith produce fax images, transmission summaries, target lists, and broadcast data (where available) for approximately 3,300 fax broadcasts and the parties were to designate 40 sample broadcasts about which Smith would produce further documents. *Arkin 1*, Docs. 75, 81. After receiving the initial documents about the 3,300 campaigns but before production of any additional documents about any of the campaigns, the *Arkin 1* parties participated in a private mediation. *E.g.*, *Arkin 1*, Docs. 79, 80. The Court ordered the parties to advise the Court as to the status of their mediation by August 23, 2018. *Arkin 1*, Doc. 85. On August 23, 2018, after signing a binding term sheet for a class-wide settlement, Arkin filed a stipulation of voluntary dismissal. Doc. 86.

## II. The *Arkin* settlement travels to Illinois state court.

Arkin filed a new action in Illinois state court and presented his settlement for approval there. *Arkin v. Smith Medical Partners, LLC*, No. 18 CH 984 (Lake Co., IL). That case—"*Arkin 2*"—was filed on August 23, 2018, the same day *Arkin 1* was voluntarily dismissed. **Exhibit C** (*Arkin 2* Complaint). On November 29, 2018, Arkin filed a motion requesting that the Illinois court preliminarily approve the proposed settlement and order notice to the class. **Exhibit D** (Motion). The court requested additional briefing on Arkin counsel's proposal to take $7,000,000

for fees. **Exhibit E** (Arkin supplemental preliminary approval brief justifying attorney's fees).

Arkin argued the settlement was appropriate because:

Many, if not most, of the documents sent by fax were FDA recall notices or were otherwise informational and not advertisements. Furthermore, many of the fax recipients were Defendants' customers who Defendants claim had requested to receive communications from Defendants via fax. The discovery was further complicated by the fact that images and transmission records were not available for many of the broadcasts. Defendants asserted affirmative defenses of Established Business Relationship ("EBR"), prior express invitation or permission, and the lack of ascertainability of the class. [*Id.* at 2]

Arkin's motion attached the settlement agreement. The settlement provided for notice to be sent by fax or by mail if the fax failed. Arkin Agreement, **Exhibit F**, at p. 15, Section IV, ¶ 3(b). Any class member who submitted a claim would receive $493.32. *Id.* at p. 11, Section III, ¶ 1(d). Class members who did not submit claims would receive nothing, and all unclaimed money would revert to Smith. *Id.* Arkin would apply for a $15,000 incentive award. *Id.* at p. 27, Section VI, ¶ 1(b). Arkin's counsel would apply for $7 million in attorney's fees. *Id*. at ¶ 1(a). The settlement contained a clear sailing provision pursuant to which Smith agreed not to object to Arkin's attorney's fee or incentive award requests. *Id.* at p. 28, Section VI, ¶ 1(c).

The *Arkin* settlement contained several non-standard provisions:

- The settlement agreement (like the later-discovered, binding term sheet) granted any party a license to terminate the agreement before the final approval hearing for "any reason or no reason at all." *Id.* at p. 22, Section IV, ¶ 9(c).

- If the Illinois court did not finally approve the settlement (or the settlement was canceled), the settlement agreement required Arkin to dismiss the state court case and re-file it in this Court. *Id.* at ¶ 9(d). The *Arkin* settlement agreement contains no tolling agreement or provision expressly protecting class members from statute of limitations defenses caused by Arkin's voluntary dismissals and re-filings.

- "[I]n consideration of the settlement as described in this Release and Settlement Agreement," the settlement agreement permitted Arkin's counsel to "defer" taxes on the $7 million in fees for however long they felt like it—class members were given no such deferral option or tax benefit, or any benefit in exchange—and attempted to involve the Illinois court (unknowingly) in this obviously improper tax avoidance scheme *Id.* at p. 28, Section VI, ¶ 1(d) and internal exhibit C at 4-5.

If these provisions benefited the class, Arkin's counsel failed to explain how.

On March 25, 2019, Plaintiff filed a timely objection to the *Arkin* settlement. **Exhibit G** (Objection). Plaintiff sought discovery of information viewed as relevant to considering the settlement terms, but Arkin convinced the Illinois court to put off any such effort, as Arkin's counsel insisted the final approval hearing must go forward as noticed. **Exhibit H** (April 18, 2019 Order). On April 22, 2019, Arkin filed a brief responding to Plaintiff's objection and urging the Illinois court to finally approve the settlement. **Exhibit I** (Brief). Arkin explained that settlement was appropriate because:

> Defendants asserted defenses of "established business relationship" ("EBR") and "prior express invitation or permission," which Defendants argued presented individualized questions precluding class certification. *See, e.g., Gorss Motels, Inc. v. Safemark Sys., LP*, 2018 WL 1635645, at *5 (M.D. Fla. Apr. 5, 2018) (denying class certification in TCPA fax case on this basis). [*Id.* at 2-3.[1]]

Arkin further supported the settlement by explaining:

> The case was also complicated by the fact that images and transmission records were not available for many of the fax broadcasts. In opposing class certification, Smith undoubtedly would have argued that the lack of transmission records showing which fax numbers successfully received the faxes meant a class would not be "ascertainable" under the standards often applied by federal courts in the Eleventh Circuit. [*Id.* at 3]

Arkin noted that 1,660 claims were submitted from the more than 40,000 persons notified about the proposed settlement, a 3.9% claims rate. *Id.* at 4. Thus, the class was to receive only $818,911.20—(1,660 * $493.32)—from the nominal "$21 million" settlement fund. Arkin's counsel nonetheless asked the Court to award them $7 million in fees. *Id.* at 6.

Smith did not file a brief supporting final approval of the settlement. Instead, the day after Arkin filed for final approval, Smith and Arkin filed a joint emergency motion to adjourn the fairness hearing. **Exhibit J** (Emergency Motion). The parties said they were "discussing

---

[1] The Eleventh Circuit affirmed. *Gorss Motels, Inc. v. Safemark Sys., LP*, 931 F.3d 1094 (11th Cir. 2019).

potential modifications to the settlement" in order to moot the Plaintiff's objections. *Id.* at 2. On April 25, 2019, over Plaintiff's objections, the Illinois court granted the settling parties' motion to adjourn the fairness hearing, and set the case over to May 31, 2019, at which time the court expected to hear news of a revised settlement. **Exhibit K** (Order). It did not get one.

Instead, on May 13, 2019, Smith filed a "Notice of Termination of Settlement" under the provision of the *Arkin* settlement that "[a]ny Party shall have the right to void, rescind and terminate the settlement, for any reason or no reason at all, at any time prior to the Court's Final Approval Hearing." **Exhibit L** (Termination Notice). Arkin never offered any defense for that clause in its settlement. On June 7, 2019, the court entered an order decertifying the settlement class and vacating preliminary approval. **Exhibit M** (Order). After incorporating some of the revisions urged by Plaintiff, Smith notified the class of the settlement's cancellation. *Id.*

Of note, the Supreme Court's decision in *China Agritech, Inc. v. Resh*, __ U.S. __, 138 S.Ct. 1800 (2018), provides that successive class actions do not toll statutes of limitations. As such, while the *Arkin 2* settlement involved a class sent faxes as early as September 26, 2013—four years before the filing of *Arkin 1*—Arkin's serial dismissal and re-filing arguably created a statute of limitations defense for Smith as to the first 22 months of claims.[2] Indeed, Arkin's counsel voluntarily abandoned those claims by filing complaints in *Arkin 3* and *Sawyer* alleging a class reaching back only four years before filing, and excluding those 22 months of claims from the action. *See Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 352-53 ("a class complaint notifies the defendants not only of the substantive claims being brought against them,

---

[2]    The *Arkin* settlement provided that, if the settlement was canceled, "the Parties shall be returned to the status quo ante as if this Agreement had never been entered into." **Exhibit F**, pp. 22-23, Section IV, ¶ 9(d). It is likely, but not assured, that such a defense would be held to be waived, or that Smith is estopped to raise it. *See, e.g., Tech. Training Assocs. v. Buccaneers L.P.*, Case No. 16-cv-1622, 2019 WL 4751799 at *47-51 ("the four-year statute of limitations related to TCPA claims acts only as a procedural limit or an affirmative defense subject to waiver.").

but also of the number and generic identities of the potential Plaintiff who may participate in the judgment").

Following the cancellation of the *Arkin* settlement, Plaintiff filed its class action complaint against Smith in the Illinois court where *Arkin 2* was pending (Smith is based in Illinois). Smith removed the case to federal court, where it was consolidated by agreement with *Sawyer* and then, also by agreement, transferred to this Court and consolidated with *Arkin 3*.

After the *Arkin* settlement was canceled, the class decertified, and after Plaintiff filed its complaint, Plaintiff began discussing settlement with Smith. Plaintiff and Smith eventually participated in a mediation led by retired United States Magistrate Judge Morton Denlow (now of JAMS and who has mediated dozens of TCPA class settlements), but after a full day of mediation and several follow up discussions, the parties reached an impasse. In December 2019, the parties resumed negotiations and negotiated the instant settlement.

### III. The evidence of Smith's faxing to the Settlement Class.

For purposes of negotiating this settlement, Smith provided Plaintiff all of the documents Smith previously produced to Arkin's attorneys, including the fax templates/images, target lists, summary reports, and transmission reports in Smith's possession. The category of "transmission reports" includes relatively few "detail reports"—spreadsheets purportedly identifying both successful and unsuccessful fax transmissions—and hundreds of "exception reports"— spreadsheets purportedly identifying the fax numbers that were not sent a particular fax.

Each of the broadcasts for which a "detail report" exists was a transmission of a Smith "recall notice"—something Smith would argue did not constitute a TCPA "advertisement"—and in any event totaled just 1,980 successful transmissions. The only way to identify the fax numbers that appear to have received non-recall fax transmissions (*i.e.,* more obvious advertisements) would be through comparing a target list to an exception report for a broadcast

where both exist, along with the fax template. Relatively few fax broadcasts have all this data. For settlement purposes, the parties have agreed to include every fax number appearing on any of the fax target lists (the "Class List"). There are 46,988 unique fax numbers on the Class List.

Finally, it is clear that most of the faxes were sent to Smith's customers, as Ms. Austin testified in *Arkin 1*. As a result, given the myriad interactions between a company and its regular customers, it is likely that Smith could credibly argue against class certification that individual issues of express permission predominate with respect to permission.

## IV.    The terms of Plaintiff's settlement with Smith.

The proposed settlement improves on the failed *Arkin* settlement. First, Smith will pay $4.5 million into a non-reversionary Settlement Fund, at least $3.25 million of which will be paid to claiming class members; *i.e.*, nearly four times the $818,911.20 the class members would have been paid in *Arkin 2*. The claimants will share that $3.25 million equally, per fax number. Plaintiff insisted that the claim forms submitted in the *Arkin* settlement should be honored in this settlement, so no further action is required by those class members. The *Arkin* claimants will very likely be paid more in this settlement—perhaps more than $1,000, depending upon the claims rate—and the other class members can claim a share of the bounty, too.

Second, with the Court's approval, the notice and claim form will be sent both by U.S. Mail and by facsimile, rather than only one way as in *Arkin 2*, in order to improve the reach of the notice and encourage claims participation.

Third, the settlement includes none of the odd provisions in *Arkin 2* discussed above, such as the cancellation provision, the federal-state-federal maneuvering, or an attempt to involve a court in Arkin's attempt to shield awarded attorney's fees from taxation.

The settlement's key terms include:

a.    <u>Certification of a Settlement Class</u>. The Parties have stipulated to

certification of a "Settlement Class" defined as "All persons who were sent, by or on behalf of H. D. Smith, LLC or Smith Medical Partners, LLC, one or more advertisements by facsimile from September 26, 2013 through January 25, 2019." Excluded from the Settlement Class are Smith, any parent, subsidiary, affiliate or controlled person of Smith, as well as the members, managers, officers, directors, agents, servants or employees of Smith, the immediate family members of such persons, and this Court. **Exhibit A**, p. 8, Section II, ¶ 30.

b.     <u>The Class Representative and Class Counsel</u>. The parties have agreed that Plaintiff is the "Class Representative" and that Plaintiff's attorneys at Bock, Hatch, Lewis & Oppenheim, LLC are "Class Counsel" for the Settlement Class. *Id.*, p. 5, ¶ 5

c.     <u>Monetary relief to the members of the Settlement Class</u>. Smith has agreed to pay $4,500,000 (the "Settlement Fund") to be distributed—subject to the Court's approval—(1) to pay class member claims, (2) to pay an incentive award to Plaintiff for serving as the Class Representative, (3) to pay the attorney's fees and litigation expenses the Court awards to Plaintiff's attorneys as Class Counsel, and (4) to pay the costs of administering the settlement. Because the Settlement Fund is non-reversionary, all money will be distributed and none will revert to Smith. *Id.*, p. 9, ¶ 32.

d.     <u>Class Notice</u>. The parties have agreed to notify the Settlement Class about the settlement by sending a "Notice of Class Action Settlement with Attached Claim Form" both by U.S. Mail and by facsimile. The notice includes instructions about opting out, objecting, or submitting a claim form to the Settlement Administrator by fax, mail, or through a settlement website. *Id.*, p. 16, Section IV, ¶ 3(b) and Exhibit 2 thereto.

e.     <u>Claims</u>.

(1)     <u>Claim Form</u>. The notice attaches a simple, one-page Claim Form for submitting claims for payment from the Settlement Fund. The Claim Form is the last page of Exhibit 2 to the Settlement Agreement. Submitting a claim requires merely that a class member affirms that a fax number on the Class List (those fax numbers identified on the fax lists Smith used for sending faxes) was the class member's fax number during the Class Period. Each claiming class member will receive an equal share of the Settlement Fund for each of their fax numbers on the Class List; so, if 3,000 fax numbers are claimed, the owner or user of each will be paid 1/3000th of the funds available for claimants (or approximately $1,083 per fax number). *Id.* at pp. 10-11, Section III, ¶¶ 1(c) and 1(d). Class members who submitted claims in the canceled *Arkin* settlement will be considered to have already submitted their claims here and need take no further action to receive their share of the Settlement Fund. *Id.*, p. 12, Section III, ¶ 1(e).

(2)     <u>Settlement Administrator</u>. The parties will engage Heffler Group, a professional settlement administrator ("Settlement Administrator"), to issue the class notice, maintain a settlement website, receive claim forms, assist class members in completing and submitting claim forms, provide a list of accepted and rejected claims to the parties' counsel (along with the claim forms submitted), and ultimately issue the settlement checks. The parties have agreed the Settlement Administrator's decisions

about the validity of claims, following any objection, shall be final and binding. *Id.*, pp. 8, Section II, ¶ 30 and pp. 12-13, Section III, ¶ 2(a). The Settlement Administrator will be paid from the Settlement Fund. *Id.*, p. 13, Section III, ¶ 3(a). The Heffler proposal is attached as **Exhibit N**.

      f.    Release. The Settlement Class will release all claims that were brought or could have been brought against Smith and the other released parties, as defined in the Agreement, about Smith Faxes during the Class Period. *Id.*, pp. 25-28, Section V.

      g.    Attorney's fees and expenses and Class Representative award. Class Counsel will apply to the Court for an award of attorney's fees of 25% of the Settlement Fund ($1,125,000.00), plus their reasonable, out-of-pocket expenses. Class Counsel will also ask the Court to award $15,000.00 to Pressman, Inc. for serving as the Class Representative. *Id.*, pp. 5-6, Section II, ¶¶ 11, 15; p. Section VI, p. 29, ¶¶ 1(a) and (b). The class notice informs the Settlement Class about these requests and that class members may object to them if they choose to do so. *Id.*, Ex. 2 thereto, p. 3.

## ARGUMENT

I.    **The settlement is within the range of reasonableness, meets all Rule 23 (e) requirements, and warrants preliminary approval and notice to the Settlement Class.**

In analyzing any settlement, "there is an overriding public interest in favor of settlement [because it] is common knowledge that class action suits have a well deserved reputation as being most complex." *Strube v. American Equity Inv v. Life Ins. Co*., 226 F.R.D. 688, 698 (M.D. Fla. 2005) (*quoting Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) (citation omitted); *see also Pierre-Val v. Buccaneers Ltd. P'ship*, No. 8:14-cv-01182-CEH-AEH, 2015 WL 12843848, at *7 (M.D. Fla. Dec. 7, 2015) ("[S]erious questions of law and fact exist such that the value of an immediate recovery outweighs the mere possibility of further relief after protracted and expensive litigation."). "In evaluating a settlement's fairness, "the Court must not forget that compromise is the essence of a settlement." *Strube*, 226 F.R.D. at 699 (internal citations omitted). "Settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and preventing lawsuits." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1341, *quoting In re*

*Nissan Motor Corp. Antitrust Litig.,* 552 F.2d 1088, 1105 (5th Cir. 1977).

"Approval of a class-action settlement is a two-step process. In the first step, the Court determines whether the proposed settlement should be preliminarily approved." *Fresco v. Auto Data Direct, Inc*., 2007 WL 2330895, *4 (S.D. Fla. May 14, 2007), *citing* David F. Herr, Annotated Manual for Complex Litigation § 21.632 (4th ed. 2004). "A proposed settlement should be preliminarily approved if it 'is within the range of possible approval or, in other words, [if] there is "probable cause" to notify the class of the proposed settlement.'" *Id.* (*quoting Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 855 F. Supp. 825, 827 (E.D.N.C. 1994) and *Armstrong v. Board of School Directors*, 616 F.2d 305, 312 (7th Cir. 1980)).

"In the second step, following appropriate notice to the class and after hearing from any potential objectors, the Court makes a final decision whether to approve the proposed settlement." *Id.* A court may finally approve a class action settlement if the settlement "is fair, reasonable, and adequate." Fed. R. Civ. P. 23 (e) (1) (C). *See Nelson v. Mead Johnson & Johnson Co.,* 484 Fed. Appx. 429, 434 (11th Cir. 2012). The factors are: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the anticipated complexity, length, and expense of further litigation; (5) opposition to the settlement; and (6) the stage of the proceedings at the time of settlement. *See Faught v. Am. Home Shield Corp*., 668 F.3d 1233, 1240 (11th Cir. 2011), *citing In re CP Ships Ltd. Sec. Litig*., 578 F.3d 1306, 1315 (11th Cir. 2009).

For final approval, Federal Rule 23 (e) (2) requires that: (A) the class representative and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief

to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other. The Court will find that the settlement satisfies these requirements.

### A.     The class representative and class counsel have adequately represented the Settlement Class.

As discussed above, Plaintiff and its counsel objected to the prior *Arkin* settlement. After that settlement was canceled, Plaintiff filed its own class action case. Plaintiff's counsel worked diligently to improve the settlement terms for the class—generally at the expense of attorney's fees—and reached the proposed settlement, which guarantees $3.25 million to class members despite intervening developments in the law creating additional hurdles to prevailing on class certification and the merits.

Plaintiff and the other members of the Settlement Class have the same interest in the relief afforded by the settlement, and no diverging interests. Further, the Bock firm has class action experience going back to the 1990s and has been a leader and innovator in the field of TCPA class action litigation. The firm's attorneys focus exclusively on class actions, and since 2003 the firm has litigated hundreds of class actions like this one. Courts have certified classes and appointed Bock as class counsel in more than 70 such cases; others have appointed Plaintiff's counsel as lead class counsel. **Exhibit O** (Firm Resume), at 6-11. The firm has briefed and argued numerous appeals that shaped this area of the law. *Id.* at 3-5.[3]

---

[3]      For example, Bock has argued several seminal TCPA appeals, including *Ira Holtzman, C.P.A. & Assocs., Ltd. v. Turza*, 728 F.3d 682 (7th Cir. 2013), *Nack v. Walburg*, 715 F.3d 680 (8th Cir. 2013), *Bridgeview Health Care Center, Ltd. v. Clark*, 816 F.3d 935 (7th Cir. 2016), *City Select Auto Sales Inc. v. BMW Bank of N. Am. Inc.*, 867 F.3d 434 (3d Cir. 2017), and *Valley Forge Ins. Co. v. Swiderski Electronics, Inc.*, 223 Ill. 2d 352 (Ill. 2006) (establishing insurance coverage for TCPA claims). The firm has played the role of lead counsel at 10 TCPA class action trials, including 6 that were tried to verdict. **Exhibit O** at 2-3.

**B.      The settlement was negotiated at arm's length.**

A class action settlement should be approved when a court finds "the settlement is fair, adequate and reasonable and is not the product of collusion between the parties." *Strube*, 266 F.R.D. at 697, *quoting Cotton*, 559 F.2d at 1330; *see also Lipuma v. American Express Co*., 406 F. Supp. 2d 1298, 318-19 (S.D. Fla. 2005) (the "benefits conferred upon the Class are substantial, and are the result of informed, arm's-length negotiations by experienced Class Counsel").

The settlement here is the result of extensive, arm's-length negotiations between experienced attorneys who are knowledgeable with this class action litigation and with the legal and factual issues of this Action. Plaintiff's counsel are experienced in complex litigation, certification, trial, and settlement of nationwide class action cases, particularly cases in this field. Plaintiff's counsel first gained knowledge of the issues in the case through Plaintiff's objection and the ensuing proceedings in *Arkin 2*. After Smith canceled that settlement, and the Illinois court decertified the *Arkin 2* settlement class, Smith produced documents it had produced to Arkin's counsel, and Plaintiff's counsel and Smith engaged in a private mediation, subsequent negotiations, and reached an impasse. Later, the parties resumed negotiations to reach the instant settlement, which is better for the class than the failed *Arkin* settlement in every way.

The litigation against Smith proceeded through written discovery, when Arkin first attempted to settle the claims. In reaching the instant settlement, Plaintiff's counsel reviewed and analyzed the approximately 10,000 documents Smith produced in *Arkin 1*, as well as the case record for both *Arkin 1* and *Arkin 2*, including statements of counsel. Moreover, Plaintiff's counsel drew on their own extensive knowledge and experience of this area of the law in order to make educated determinations about the strengths and weaknesses of the case and the value of

the settlement as compared to the expected value of the case if litigated.

**C.    The relief provided for the Settlement Class is adequate.**

**1.    The costs, risks, and delay of trial and appeal.**

The TCPA gives private citizens a right to sue to (i) enjoin future transmissions, (ii) recover the greater of actual monetary damages or $500 in damages for each junk fax, or (iii) obtain an injunction plus damages. If a court finds that the sender willfully or knowingly violated the TCPA, it may increase the award up to three times the amount of damages.

As discussed above, the class would face significant risks both at the class certification stage and at trial. Missing or incomplete records identifying who received the faxes has been held to preclude class certification in TCPA fax cases. *See, e.g., Sandusky Wellness Center, LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 470-73 (6th Cir. 2017); *St. Louis Heart Ctr., Inc. v. Vein Ctrs. for Excellence, Inc*., Case No. 12-cv-174, 2017 U.S. Dist. LEXIS 103142 (E.D. Mo. July 5, 2017). *Cf. City Select Auto Sales Inc. v. BMW Bank of North America*, 867 F.3d 434, 441-42 (3d Cir. 2017) (class members could submit affidavits attesting to receipt of faxes). Under the settlement, class members can claim a share of the Settlement Fund merely by confirming that their fax number was one of the potential targets of the Smith faxes, without having to remember—or declare—receiving one and without possessing any copies of old faxes.

The fax templates vary greatly, some clearly advertising and others unlikely to be viewed as advertising, but the vast majority of the faxes were sent to Smith's customers. Courts have held that individual issues of consent predominate where faxes were sent to customers as opposed to strangers. *See, e.g., Gene & Gene LLC v. Biopay LLC*, 541 F.3d 318 (5th Cir. 2008); *Brodsky v. HumanaDental Ins., Co*., 910 F.3d 285 (7th Cir. 2018). In *Gorss Motels*, *supra*, the Eleventh Circuit held that franchise agreements may suffice as consent to receive faxed advertisements even if they do not specifically so state. 931 F.3d at 1101 ("Although express

15

permission requires a clear and unmistakable communication, it does not require that a recipient state specifically that his permission includes faxed advertisements.") (internal quotation omitted).

Further, the statute of limitations defense against class members sent faxes between September 26, 2013 and June 7, 2015—courtesy of Arkin's decision to dismiss and refile without requiring an express tolling or waiver agreement—could wipe out a large percentage of claims. TCPA claims are governed by a four-year statute of limitations. 28 U.S.C. § 1658. *Sawyer* and *Arkin 3* do not even attempt to include those claims, as their pleaded classes include only the four years of claims prior to their most recent filing dates.

Most recently, there is the recent *Amerifactors* decision by the FCC, which adds another layer of complication by introducing another possible individual issue potentially requiring evidence or affidavits from putative class members. *In the Matter of Amerifactors Financial Group, LLC Petition for Expedited Declaratory Ruling,* DA 19-1247. **Exhibit P**. The TCPA forbids the sending of unsolicited advertisements to telephone facsimile machines. 47 U.S.C. § 227(b)(1)(C). The TCPA defines "telephone facsimile machine" as "equipment which has the capacity (A) to transcribe text or images, or both, from paper into an electronic signal and to transmit that signal over a regular telephone line, or (B) to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper." 47 U.S.C. 227 (a)(3).

On December 9, 2019, the Chief of the FCC's Consumer and Governmental Affairs Bureau issued a declaratory ruling in *Amerifactors* holding that "an online fax service that effectively receives faxes 'sent as email over the Internet' and is not itself 'equipment which has the capacity ... to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper' is not a 'telephone facsimile machine' and thus falls outside the

scope of the" TCPA. *Id.* at 1-2. The decision has been appealed to the full FCC with plaintiff-side attorneys arguing, among other things, that the *Amerifactors* decision undermines or reverses the FCC's broad interpretation of "telephone facsimile machine" in *Westfax, Inc. Petition for Declaratory Ruling*, CG Docket Nos. 02-278 and 05-338, Declaratory Ruling, 30 FCC Rcd 8620, 8623 (2015).

If the FCC pronouncement governs this action, or the Court reaches the same conclusion upon its own review of the TCPA's definition of "telephone facsimile machine" and refuses to defer to the FCC's decision in *Westfax*, the issue will be an additional, significant hurdle to class certification and, even if certified, a barrier to proving class-wide damages and distributing relief to the class members.[4] Assuming *Amerifactors* does not prevent class certification, and assuming success, judgment, and success on appeal, Smith will argue only those persons who received the faxes on traditional facsimile machines may collect, necessitating the submission of claim forms.

Finally, even if Plaintiff and the class were to win across the board, a new decision by the Eighth Circuit affirmed a reduction of a large TCPA statutory damages award on due process grounds. *Golan v. FreeEats.com*, 930 F.3d 950 (8th Cir. 2019).

An adequate settlement avoids risk of loss and delay. *See Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983) ("the very purpose of the compromise is to avoid the delay and expense of … trial")*; Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 834 (E.D. Mich. 2008) ("class members would bear the risk that continued litigation will leave them with nothing because of loss and, in some cases, also because of delay"). A person who can receive a payment

---

[4]     Of note, the Middle District of Florida is poised to decide the impact of *Amerifactors* on class certification in *Scoma Chiropractic, P.A. v. Dental Equities, LLC*, Case No. 16-cv-41. Judge Steele stayed the case pending the resolution of *Amerifactors* and Judge Corrigan recently entered a class certification briefing schedule with the last brief due June 5, 2020. *Id.*, Doc. 158. In sum, the issue is likely to be litigated—and affect litigation—for a long time to come.

now, by submitting a claim form identifying himself as the owner or user of a fax number, should prefer that option to the uncertain possibility of a higher value payment that could only be accomplished through additional effort, delay, and risk. *See Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.,* 497 F.3d 615, 632 (6th Cir. 2007). Plaintiff's settlement avoids the risks in holding out for such a judgment, the certain delay in getting there, and the administrative issues of finding class members years in the future.

## 2.   The effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims.

As discussed above, class actions have a well-deserved reputation for complexity. The traditional means for handling claims like those at issue here would tax the court system, require massive expenditures of public and private resources, and would be impracticable, given the relatively small value of the claims of the individual class members. *See Strube*, 226 F.R.D. at 698. The settlement is the best vehicle for class members to obtain relief, promptly and efficiently.

Individual notice will be sent by both U.S. Mail and by facsimile. The class members are businesses that retail or distribute pharmaceuticals and medical supplies, primarily pharmacies, hospitals, and medical clinics. Such businesses routinely look to their mailbox and fax machine for important notices, rather than to social media or internet pages.

As discussed above, under the settlement, class members can claim a share of the settlement fund merely by confirming that they are in the group of potential targets of the faxes without having to remember—or declare—receiving any fax. Claims will be processed by an experienced professional settlement administrator, who will distribute the entire Settlement Fund (after fees, expenses, and incentive award) among the participating class members.

3.      **The terms of any proposed award of attorney's fees, including timing of payment costs, risks, and delay of trial and appeal.**

The attorney's fees are based upon the amount actually delivered to class members and will be paid when the claiming class members are paid. The fees sought are 25% of the Settlement Fund, which is the benchmark rate for class actions in this Circuit. *Camden I Condo. Ass'n*, 946 F.2d at 774 (11th Cir. 1991).

4.      **There is no agreement required to be identified under Rule 23(e)(3); no agreement other than the Settlement Agreement.**

The "Agreement contains the full, complete, and integrated statement of each and every term and provision agreed to by and among the Parties and supersedes any prior writings or agreements (written or oral) between or among the Parties, which prior agreements may no longer be relied upon for any purpose. **Exhibit A** at ¶ 7(2)(a), p. 30.

D.      **The settlement treats class members equitably relative to each other.**

Each class member who does not opt-out of the Settlement Class and who submits a timely and valid claim form will be mailed a check for an equal share of the Settlement Fund, $3.25 million after deductions for Court-awarded fees, expenses, and incentive award. This is an excellent outcome and result, especially given the posture of the litigation. Class members can obtain a significant monetary payment while avoiding the costs and risks associated with further litigation. Without the settlement, the Class might recover substantially less, if anything at all.

As noted above, combining the target lists creates a total Class List of 46,988. Of those, 1,660 submitted claims in the *Arkin 2* settlement and would receive a payment in Plaintiff's settlement without further action. The remaining 45,328 will have another chance to submit a claim following a better notice program. Class members may claim their share without needing to prove (or even remember) receipt of an advertising fax.

19

## II.     The Court should certify the proposed Settlement Class for settlement purposes only.

"Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems ... for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *see also Williams v. New Penn Fin., LLC*, No. 3:17-CV-570-J-25JRK, 2018 WL 8584026, at *2 (M.D. Fla. Oct. 26, 2018), *report and recommendation adopted*, 2018 WL 8584027 (M.D. Fla. Dec. 21, 2018). Certification of the proposed Settlement Class will allow notice of the settlement to issue to inform Settlement Class members of the existence and terms of the settlement, of the opportunity to submit claims, of their right to object and be heard on its fairness or to opt-out, and of the date, time and place for the final approval hearing. *See* MANUAL FOR COMPL. LIT. at §§ 21.632, 21.633. For the reasons set forth below, certification is appropriate under Fed. R. Civ. P. 23(a) and (b)(3).

### A.     Plaintiff has standing.

Although not an explicit Rule 23 requirement, "prior to the certification of a class … the district court must determine that at least one named class representative has … standing…." *Prado-Steiman ex rel. Prado v. Bush*, 221 F. 3d 1266, 1279-80 (11th Cir. 2000). The Eleventh Circuit addressed the issue of standing in a junk fax TCPA case in *Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1250-53 (11th Cir. 2015). It held that "Congress…may 'define new legal rights, which in turn will confer standing to vindicate an injury caused to the claimant." *Id.* at 1251, *quoting Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 773 (2000).

"The TCPA, in this instance, creates such a cognizable right." *Id.* at 1252. "Notably, a prevailing plaintiff need not have suffered any monetary loss in order to recover statutory

damages." *Id.*, *citing Chapman v. Wagener Equities, Inc.*, 747 F.3d 489, 491 (7th Cir. 2014). "In enacting the TCPA, Congress chose to make evidence of transmission of the facsimile sufficient for Article III standing by the plain language of the statute. Therefore, the question of whether Plaintiff actually received the facsimile is irrelevant to liability under the TCPA." *Id.* at 1253, *quoting Bridgeview Health Care Ctr. Ltd. v. Clark,* No. 09 C 5601, 2013 U.S. Dist. LEXIS 37310, 2013 WL 1154206, at *3 (N.D. Ill. Mar. 19, 2013).

Pressman is a member of the Settlement Class and has standing. The Smith fax records show that Smith sent Pressman faxes at issue in this case and being resolved in this settlement. The Settlement Class proposed here is identical to the *Arkin 2* settlement class. Pressman received the court-ordered settlement notice in *Arkin 2*.[5]

### B.  The requirements of Fed. R. Civ. P. 23(a)(1)-(4) are satisfied.

Certification under Fed. R. Civ. P. 23(a) of the Federal Rules of Civil Procedure requires that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

### 1.  Numerosity

The numerosity requirement of Fed. R. Civ. P. 23(a) is satisfied because the Settlement Class includes the holders/users of 46,988 fax numbers in the United States and individual

---

[5]    In a previous filing (Doc. 46), Arkin argued that Plaintiff lacks standing because Plaintiff's fax number—like nearly every other class member's fax number—is not listed on a Westfax detail report purportedly identifying which fax transmissions were successful. But Plaintiff and its fax number are identified on multiple target lists correlated to Westfax exception reports identifying the unsuccessful fax transmissions and Plaintiff is not listed among those unsuccessfuls. In sum, like every other class member, Plaintiff has standing to pursue claims it received Smith faxes. *See Sarris*, 781 F.3d at 1250-53 (named plaintiff had standing even though it did not possess a copy of the fax it received because other evidence supported the conclusion that it received a fax).

joinder of all such persons is impracticable. *See* Fed. R. Civ. P. 23(a)(1).

### 2.   Commonality

"Commonality requires the Plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the Plaintiff's common contention "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541, 2551 (2011) (citation omitted). Here commonality is easily satisfied. Multiple questions of law and fact centering on Smith's faxing program are common to the Settlement Class, and class members are alleged to have been injured in the same way.

### 3.   Typicality

For similar reasons, Plaintiff's claims are reasonably coextensive with those of the absent class members such that the Fed. R. Civ. P. 23(a)(3) typicality requirement is satisfied. *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"); *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001) (named Plaintiff are typical of the class where they "possess the same interest and suffer the same injury as the class members"). Plaintiff is typical of the absent class members because it was sent Smith advertisements by fax and suffered the same injuries as the rest of the class, and because all class members will benefit from the relief provided by the Settlement.

### 4.   Adequacy of Representation

As discussed above, Plaintiff and its counsel also satisfy the adequacy of representation requirement. Adequacy under Fed. R. Civ. P. 23(a)(4) relates to (1) whether the proposed class representative has interests antagonistic to the class; and (2) whether the proposed class counsel

has the competence to undertake this litigation. Plaintiff's interests are coextensive with, not antagonistic to, the interests of the Settlement Class, because Plaintiff and the absent Settlement Class members have the same interest in the relief afforded by the Settlement, and the absent Settlement Class members have no diverging interests. Further, Plaintiff and the Settlement Class are represented by qualified and competent attorneys who have extensive experience and expertise prosecuting complex class actions.

### C.    The requirements of Fed. R. Civ. P. 23(b)(3) are satisfied.

Under Fed. R. Civ. P.23(b)(3), certification is appropriate if the common questions of law or fact predominate over individual issues of law or fact and if a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

#### 1.    Common questions predominate.

For the reasons discussed throughout, Plaintiff readily satisfies the Rule 23(b)(3) predominance requirement because liability questions common to all Settlement Class members—*e.g.,* whether Smith faxes constitute advertisements and whether Smith sent them to class members in violation of the TCPA—substantially outweigh any possible issues that are individual to a Settlement Class member. Indeed, "[c]lass certification is normal in litigation under [the TCPA], because the main questions, such as whether a given fax is an advertisement, are common to all recipients." *Ira Holtzman, C.P.A v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013).

#### 2.    Class treatment of these claims is superior.

Finally, resolution of tens of thousands of individual claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. See Fed. R. Civ. P. 23(b)(3). The Court should certify the Settlement Class for settlement purposes only.

### III.    Plaintiff requests that the Court order notice to the Settlement Class.

Before a class action may be dismissed or compromised, notice must be given and

judicial approval must be obtained. Fed. R. Civ. P. 23(e). Notice of the settlement must satisfy due process. *Maher v. Zapata Corp.*, 714 F. 2d 436, 450-453 (5th Cir. 1983); *Walsh v. Great Atlantic & Pacific Tea Co.*, 726 F. 2d 956, 963 (3d Cir. 1983). The Court is vested with wide discretion both as to the manner in which notice is given and the form that notice is to take. 7B Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE § 1797.6 (3d ed. 2005).

Rule 23 (e) (i) (B) requires that notice of a settlement be provided "in a reasonable manner." Here, the parties have agreed to send notice to the known or suspected class members and will deliver the simple, one-page claim form with the notice, so class members can complete a claim form and return it by fax, mail, or through the settlement website as they choose.

The parties propose to issue notice by both facsimile and U.S. Mail. A copy of the proposed notice is attached as Exhibit 2 to the Agreement. The target lists used to create the Class List contain names, addresses, and fax numbers, not always complete, and the Settlement Administrator is equipped to perform reverse lookup and verify the information in the Target List against the National Change of Address Database.

The contents of the notice "must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23 (c) (3)." Here, the notice satisfies these requirements.

The notice meets the legal standards for appropriate notice and satisfies Rule 23 (e). Therefore, Plaintiff respectfully requests that the Court approve the notice and order its dissemination to the Class by facsimile and U.S. Mail.

IV.     **The Court should schedule a final approval hearing.**

Plaintiff requests that the Court schedule a hearing to allow the proponents and any opponents of the settlement to voice their opinions or objections. The Notice informs the Settlement Class about this hearing. **Exhibit A**, Ex. 2. At the hearing, Plaintiff will request that the Court enter the parties' agreed Final Approval of Agreement and Judgment, which is attached as Exhibit 3 to the Agreement.

V.      **The Court should stay this action and enjoin related lawsuits.**

To preserve the *status quo* while the Court considers this settlement, Plaintiff requests that the Court stay this case and enter a preliminary injunction against the members of the Settlement Class prohibiting them from initiating any new putative class action or continuing to litigate any pending putative class action regarding the claims at issue. (Plaintiff knows only of the *Arkin 3* and *Sawyer* putative class actions consolidated with this action.) The injunction will not apply to any member of the Settlement Class who opts out and is excluded from the Settlement Class by action of the Court. Furthermore, this injunction will be lifted if the Court denies approval of the settlement or if the Settlement Agreement is otherwise terminated.

<u>**CONCLUSION**</u>

Because the proposed settlement is within the range of possible approval, Plaintiff respectfully requests that the Court (1) preliminarily approve the settlement and certify the Settlement Class for settlement purposes only, (2) order the parties to notify the Settlement Class, and (3) schedule a fairness hearing to determine whether to finally approve the settlement. The proposed Preliminary Approval Order is attached as **Exhibit B**. Due to CAFA's requirements, 28 U.S.C. § 1715, the final approval hearing should be on a date no sooner than 120 days after preliminary approval. The settling parties suggest a date in June 2020 would be appropriate.

Respectfully submitted,

PRESSMAN, INC., individually and as the putative
representative of the proposed Settlement Class

By: s/ Phillip A. Bock
          One of its attorneys

Phillip A. Bock
Robert M. Hatch
Tod A. Lewis
Jonathan B. Piper
BOCK, HATCH, LEWIS & OPPENHEIM LLC
134 N. La Salle Street, Suite 1000
Chicago, IL 60602
Telephone: 312/658-5500

## CERTIFICATE OF E-FILING AND SERVICE

I hereby certify that on February 18, 2020, I electronically filed the foregoing using the ECF System, which will send notification of such filing to all counsel of record.

<u>s/ Phillip A. Bock</u>