IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | | |
|---|---|---|
| Steven Arkin, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 8:19-CV-1723-T-36TGW |
| | ) | |
| Smith Medical Partners, LLC | ) | Hon. Charlene Honeywell |
| and H. D. Smith, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| **consolidated with** | ) | |
| | ) | |
| William D. Sawyer, M.D., Pressman, Inc., | ) | |
| et al. v. Smith Medical Partners, LLC and | ) | |
| H. D. Smith, LLC, No. 8:19-cv-02410-CEH | ) | |

## PLAINTIFF PRESSMAN, INC.'S MOTION
## IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiff, Pressman, Inc. ("Plaintiff"), individually and as the representative of the Settlement Class, hereby requests that the Court enter an Order finally approving the parties' Settlement Agreement and dismissing this consolidated action with prejudice. Pursuant to Local Rule 3.01(g), undersigned counsel certifies that he conferred with the other counsel in this consolidated litigation and: (1) counsel for Defendants agree on the resolution of this motion; and (2) counsel for plaintiffs Arkin and Sawyer stated that they intend to oppose in whole or in part. Plaintiff has prepared a proposed order, which is attached as Exhibit A hereto.

## INTRODUCTION

Although "blast fax" class actions might appear to be relatively simple—*i.e.,* the issue of whether a defendant sent unsolicited advertisements by fax may not seem

complex—TCPA class action jurisprudence generally, and the issues in this case specifically, reveal "simple" to be an unfair characterization. There were great risks to the class in further litigation, and the settlement is an excellent result in light of those risks.

As discussed in "Plaintiff Pressman, Inc.'s Renewed Motion for Preliminary Approval of Class Action Settlement and Certification of Settlement Class" (Doc. 58), this settlement was achieved despite the myriad risks to the class both at the class certification stage and at trial. Missing or incomplete records identifying who received the faxes has been held to preclude class certification in TCPA fax cases. *See, e.g., Sandusky Wellness Center, LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 470-73 (6th Cir. 2017); *St. Louis Heart Ctr., Inc. v. Vein Ctrs. for Excellence, Inc.*, Case No. 12-cv-174, 2017 U.S. Dist. LEXIS 103142 (E.D. Mo. July 5, 2017). *Cf. City Select Auto Sales Inc. v. BMW Bank of North America*, 867 F.3d 434, 441-42 (3d Cir. 2017) (class members could submit affidavits attesting to receipt of faxes). Under the settlement proposed here, class members were able to claim a share of the Settlement Fund merely by confirming that their fax number was one of the potential targets of Defendant's fax campaigns, without having to remember—or declare— receiving faxes and without possessing any copies.

The fax templates at issue varied greatly, with some including content that is clearly advertising and others including content unlikely to be viewed as advertising. The vast majority were sent to Defendants' customers. Courts have held that individual issues of consent predominate for faxes sent to customers as opposed to

2

strangers. *See, e.g., Gene & Gene LLC v. Biopay LLC,* 541 F.3d 318 (5th Cir. 2008); *Brodsky v. HumanaDental Ins., Co.*, 910 F.3d 285 (7th Cir. 2018). In *Gorss Motels, Inc. v. Safemark Sys., LP*, 931 F.3d 1094 (11th Cir. 2019), the Eleventh Circuit held that franchise agreements may suffice as consent to receive faxed advertisements even if they do not specifically so state. *Id.* at 1101 ("Although express permission requires a clear and unmistakable communication, it does not require that a recipient state specifically that his permission includes faxed advertisements.") (internal quotation omitted).

Further, a statute of limitations defense against class members sent faxes between September 26, 2013 and June 7, 2015—caused by plaintiff Arkin's decision to dismiss and refile without requiring an express tolling or waiver agreement—could have defeated a large percentage of claims. TCPA claims are governed by a four-year statute of limitations. 28 U.S.C. § 1658. The complaints filed in *Sawyer* and *Arkin 3* pleaded classes that excluded those earlier claims.

More recently, there was the FCC's recent *Amerifactors* decision, which highlights another layer of complication potentially requiring evidence or affidavits from putative class members. *In the Matter of Amerifactors Financial Group, LLC Petition for Expedited Declaratory Ruling,* DA 19-1247. On December 9, 2019, the Chief of the FCC's Consumer and Governmental Affairs Bureau issued a declaratory ruling in *Amerifactors* holding that "an online fax service that effectively receives faxes 'sent as email over the Internet' and is not itself 'equipment which has the capacity ... to transcribe text or images (or both) from an electronic signal received

over a regular telephone line onto paper' is not a 'telephone facsimile machine' and thus falls outside the scope of the" TCPA. *Id.* at 1-2. The decision has been appealed to the full FCC with plaintiff-side attorneys arguing, among other things, that the *Amerifactors* decision undermines or reverses the FCC's broad interpretation of "telephone facsimile machine" in *Westfax, Inc. Petition for Declaratory Ruling*, CG Docket Nos. 02-278 and 05-338, Declaratory Ruling, 30 FCC Rcd 8620, 8623(2015).

In the wake of *Amerifactors*, this Court has held that *Amerifactors* defeated the TCPA claim of a plaintiff who received the facsimile at issue through an e-fax system. *Daisy, Inc. v. Mobile Mini, Inc.*, No. 20-cv-17, 2020 WL 5701756, 2020 U.S. Dist. LEXIS 175536 (M.D. Fla. Sept. 24, 2020). Another federal court held that a certified litigation class should exclude e-fax recipients. *Advanced Rehab & Med., P.C. v. Amedisys Holding, LLC*, No. 17-cv-1149, 2020 U.S. Dist. LEXIS 153181 (W.D. Tenn. Aug. 24, 2020). If the FCC pronouncement were held to govern this action, or the Court reached the same conclusion upon its own review of the TCPA's definition of "telephone facsimile machine" and refused to defer to the FCC's earlier decision in *Westfax*, the issue would be an additional, significant hurdle to class certification and, even if certified, make difficult proving class-wide damages and distributing relief to class members. Defendants would argue only those persons who received faxes on traditional facsimile machines could collect under the statute, necessitating the submission of claim forms.

Moreover, claiming class members are expected to recover more than $800 per fax number. (*Arkin 2* offered less than $500.) The deadline for claims submission was

November 16, 2020. Although there may still be a few timely claims in the mail, as of this writing, claims were submitted in this settlement for 2,412 fax numbers. (The Court has required that a "declaration from the Settlement Administrator regarding class notice and settlement administration" be submitted next week, by November 30, 2020.) Class members who submitted claims in the canceled *Arkin 2* settlement will recover here even without submitting a new claim form. Approximately 1,543 fax numbers were claimed through those forms. All of these claimants will share $3,211,823.26—approximately $812 each—if the Court grants the fee and expense requests made in Plaintiff's Motion and Memorandum in Support of Award of Attorney Fees and Expenses. (Doc. 83).

The Court preliminarily approved this settlement on August 4, 2020, and directed that the settling parties notify the absent class members. Notice was sent by fax and by mail. After notice, no class member objected to the Settlement, or requested exclusion. Notice was sent to the U.S. and every state's attorney general, too, and none objected. Because the Settlement is fair, reasonable, and adequate, Plaintiff respectfully requests that the Court grant final approval.

## BACKGROUND

### I. Preliminary approval and dissemination of notice.

On August 4, 2020, after consideration of the Settlement Agreement and proposed class notice plan, the Court entered an order preliminarily approving the Settlement and ordering notice to the class ("Preliminary Approval Order"). Doc. 80. As Ordered, the Settlement Administrator sent the class notice on August 18, 2020.

(*See* forthcoming declaration of Michael E. Hamer of Heffler Claims Group.) No class member objected to the Settlement or requested exclusion.

## II.   Background and summary of settlement.

As discussed at length in Plaintiff's motion for preliminary approval, Plaintiff's Class Action Complaint alleges that defendants Smith Medical Partners, LLC and H. D. Smith, LLC (collectively, "Defendants") sent unsolicited advertisements by facsimile to Plaintiff and others in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"). The action seeks statutory damages.

For purposes of negotiating this settlement, Defendants provided Plaintiff's counsel with copies of the fax templates/images, target lists, summary reports, and transmission reports in Defendant's possession. The category of "transmission reports" included relatively few "detail reports"—spreadsheets purportedly identifying both successful and unsuccessful fax transmissions—and hundreds of "exception reports"—spreadsheets purportedly identifying the fax numbers that were not sent a particular fax.

Each of the broadcasts for which a "detail report" exists was a transmission of a "recall notice"—something Defendants would argue did not constitute a TCPA "advertisement"—and in any event totaled just 1,980 successful transmissions. The only way to identify the fax numbers that appear to have received non-recall fax transmissions (*i.e.*, more obvious advertisements) would be through comparing a target list to an exception report for a broadcast where both exist, along with the fax template. Relatively few fax broadcasts have all this data. For settlement purposes,

the parties agreed to include every fax number appearing on any of the fax target lists, deeming this the "Class List." All told, there are 46,988 unique fax numbers on the Class List.

It is clear that most of the faxes were sent to Defendants' customers, as discussed previously. As a result, given the myriad interactions between a company and its regular customers, it is likely that Defendant could credibly argue against class certification that individual issues of express permission predominate.

In light of the foregoing, the parties discussed potential settlement, and engaged in arm's-length negotiations. The instant settlement resulted. Plaintiff and Defendants negotiated a formal, written settlement agreement under which Defendants will pay a total of $4,500,000 to resolve the claims at issue, at least $3.25 million of which will be paid to claiming class members; *i.e.*, nearly four times the $818,911.20 the class members would have been paid in *Arkin 2*. The claimants will share that $3.25 million equally, per fax number. Plaintiff insisted that the claim forms submitted in the *Arkin 2* settlement should be honored in this settlement, so no further action was required by those class members. Even with more than twice as many claims submitted, those original claimants will be paid more than 60% more than they would have gotten in the canceled *Arkin 2* settlement.

The key terms of the Agreement are as follows:

a.  <u>Certification of a Settlement Class</u>. The Court preliminarily certified a "Settlement Class" defined as:

> All persons who were sent, by or on behalf of H. D. Smith, LLC or
> Smith Medical Partners, LLC, one or more advertisements by
> facsimile from September 26, 2013 through January 25, 2019."

The Settlement Class excludes: Smith, any parent, subsidiary, affiliate or controlled person of Smith, as well as the members, managers, officers, directors, agents, servants or employees of Smith, the immediate family members of such persons, and this Court. Doc. 80 at ¶ 5.

b. <u>The Class Representative and Class Counsel</u>. Pursuant to the parties' agreement, the Court preliminarily appointed Plaintiff as the Class Representative and Plaintiff's attorneys (Phillip A. Bock/Bock Hatch & Oppenheim, LLC) as Class Counsel. *Id.* at ¶ 9.

c. <u>The Settlement Fund</u>. Defendants have agreed to pay $4,500,000 (the "Settlement Fund") to pay approved class member claims, an incentive payment to Plaintiff for serving as the Class Representative, attorney's fees and reasonable out-of-pocket expenses to Class Counsel, and the costs of administering the settlement, as approved by the Court. Because the Settlement Fund is non-reversionary, all money will be distributed and none will revert to Defendants. Doc. 58-1, p. 9, ¶ 32.

d. <u>Class Notice</u>. The parties notified the Settlement Class about the settlement by sending the notice and claim form by both U.S. mail and facsimile. The notice included instructions about opting out, objecting, or submitting a claim form to the Settlement Administrator by fax, mail, or through a settlement website.

e.    Claims.

(i)    Proof of Claim. The class notice included a simple, one-page claim form for submitting claims for cash payments. A class member submitting a timely and valid claim will be mailed a check for their *pro rata* share of the Settlement Fund (likely to be more than $800) for each of that member's claimed fax numbers appearing on the Class List. Agreement, Doc. 58-1, ¶ Section III, ¶¶ 1(c) and 1(d). A claimant need not possess any copy of faxes received, need not remember receiving any fax, and need not know anything about Defendants. Rather, a claimant must merely identify himself/herself/itself as a member of the Settlement Class by verifying use or ownership of one or more targeted fax numbers during the Class Period. *Id.* As a courtesy to the class members, those who submitted valid claims in the canceled *Arkin 2* settlement were not required to take further action to receive their share of this Settlement Fund, because Plaintiff convinced Defendants to permit those claims to stand here without further action. *Id.*, p. 12, Section III, ¶ 1(e).[1] Some submitted claims in this settlement anyway, but even those who did not will be paid so long as their original claim form was timely and

---

[1]    The Class Notice included an italicized paragraph that read as follows:

*\*\*NOTE: If you submitted a claim in the canceled settlement in Steven Arkin v. Smith Medical Partners, LLC, et al., Case No. 18 CH 984 (Lake County, IL), your claim will be honored in this settlement and you do not need to submit another claim form. To check on the status of your Arkin claim, you can call the Settlement Administrator at 1-844-491-5743.*

complete, as it provided the same essential information required to submit a claim in this settlement.

(ii) <u>Claims Administrator</u>. Heffler Claims Group is the Settlement Administrator. It issued the class notice, maintained a settlement website, received claim forms, assisted class members in completing and submitting claim forms (along with Class Counsel), and ultimately will issue the settlement checks. The parties have agreed the Settlement Administrator's decisions about the validity of claims, following any objections by the parties, shall be final and binding. *Id.*, pp. 8, Section II, ¶ 30 and pp. 12-13, Section III, ¶ 2(a). The Settlement Administrator will be paid approximately $90,000 from the Settlement Fund as reimbursement for its expenses and payment for its services. *Id.*, p. 13, Section III, ¶ 3(a); Doc. 58-14 (Heffler Group proposal).

f. <u>Release</u>. In consideration of the relief the Settlement made available, Plaintiff and the rest of the Settlement Class will release all claims that were brought or could have been brought, as defined in the Agreement, in this action about Defendants' advertisements sent by fax during the Class Period. *Id.*, pp. 25-28, Section V.

g. <u>Attorney's Fees and Costs and Class Representative Award</u>. Class Counsel has applied to the Court to approve an award of attorney's fees equal to 25% of the Settlement Fund ($1,125,000.00), plus reasonable out-of-pocket expenses of $23,176.74. Class Counsel also asks the Court to provisionally approve an award of $15,000.00 to Plaintiff for serving as the Class

Representative.[2]

## III. The Settlement Class was notified about the settlement.

Rule 23(e)(1) requires that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Under federal law, notice of the settlement must satisfy due process. *Maher v. Zapata Corp.*, 714 F. 2d 436, 450-453 (5th Cir. 1983); *Walsh v. Great Atlantic & Pacific Tea Co.*, 726 F. 2d 956, 963 (3d Cir. 1983). The Court is vested with wide discretion both as to the manner and form of notice. 7B Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE § 1797.6 (3d ed. 2005). Here, as ordered by the Court, Plaintiff caused the Settlement Administrator to send the class notice both by fax and by mail.

Notice by both fax and mail was a "reasonable manner" of settlement notice. *See Juris v. Inamed Corp.*, 685 F.3d 1294, 1307 n.10 (11th Cir. 2012), *citing* Fed. R. Civ. Proc. 23(e).

The content of the parties' notice complied with Rule 23(c)(2)(B), which requires that the notice "must clearly and concisely state in plain, easily understood language: (1) the nature of the action; (2) the definition of the class certified; (3) the class claims, issues, or defenses; (4) that a class member may enter an appearance

---

[2] As discussed in Plaintiff's Motion for Attorney's Fees, Expenses, and Conditional Incentive Award (Doc. 83), the propriety of incentive awards is subject to the ultimate outcome in *Johnson v. NPAS Solutions, LLC*, No. 18-12344 (11th Cir.). A petition for rehearing squarely addressing the incentive award issue was filed on October 22, 2020. On November 9, 2020, the Eleventh Circuit issued an order indicating that a judge has withheld the issuance of the mandate. Meanwhile, the *en banc* Eleventh Circuit decided *Muransky v. Godiva Chocolatier, Inc.*, No. 16-16486, -- F.3d --, 2020 WL 6305084 (11th Cir. Oct. 28, 2020), on standing grounds without reaching the propriety of incentive awards.

through an attorney if the member so desires; (5) that the court will exclude from the class any member who requests exclusion; (6) the time and manner for requesting exclusion; and (7) the binding effect of a class judgment on members under Rule 23(c)(3)." Here, the class notice explained all of those things.

Further, the claim form for this settlement was a 1-page, easy to read and understand form. *Id.* To submit a claim, a person merely needed to provide their contact information and verify use or ownership of one or more of the subject fax numbers during the class period. *Id.* Claimants did not have to provide a copy of a received junk fax or attest to remembering that any were received.

<u>ARGUMENT</u>

I.    **The Court should approve the Settlement.**

A.    **Standard for judicial evaluation and approval.**

A court should approve a class settlement that "is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(C); *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). It is well-established that there is an overriding public interest in settling and quieting class action litigation. *See, e.g., Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation.").

"[A] presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." MANUAL FOR COMPLEX LITIGATION, THIRD, § 30.42 (1995). *See also Stanspec Corp. v. Jelco, Inc.*, 464 F.2d 1184, 1187 (10th Cir. 1972) ("The law actively encourages compromise and settlement of disputes."). A

district court should not "modify the terms of a voluntary settlement agreement between parties." *Id. citing Evans v. Jeff D.*, 475 U.S. 717, 726-27 (1986). There is a "strong presumption in favor of voluntary settlement agreements." *Id.* at 594. This policy is "especially strong" in class actions. *Id.* at 595.

## B. Factors for determining whether a settlement is fair, reasonable, and adequate.

Courts typically consider the following factors in evaluating a class action settlement: (1) the risk of fraud or collusion in arriving at the settlement; (2) the likelihood of success at trial; (3) the range of possible recovery; (4) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (5) the complexity, expense and duration of litigation; (6) the substance and amount of opposition to the settlement; and (7) the stage of proceedings at which the settlement was achieved. *See Bennett*, 737 F.2d at 986. Here, these factors show the settlement should be approved.

New Federal Rule 23(e)(2), which went into effect December 1, 2018, enumerates similar factors: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other. Here, all of these factors show the settlement should be approved.

### 1. The risk of fraud or collusion.

A class action settlement should be approved when a court finds "the settlement is fair, adequate and reasonable and is not the product of collusion between the parties." *Strube v. American Equity Inv v. Life Ins. Co.*, 226 F.R.D. 688, 697 (M.D. Fla. 2005) (*quoting Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); *see also Lipuma v. American Express Co.*, 406 F. Supp. 2d 1298, 318-19 (S.D. Fla. 2005) (the "benefits conferred upon the Class are substantial, and are the result of informed, arm's-length negotiations by experienced Class Counsel").

The settlement here is the result of extensive, arm's-length negotiations between experienced attorneys who are knowledgeable about TCPA class litigation and the legal and factual issues presented in this action. Plaintiff's counsel are experienced in complex litigation, class certification, trial, and settlement of nationwide class action cases, particularly cases in this field. Plaintiff's counsel first gained knowledge of the issues in the case through Plaintiff's objection and the ensuing proceedings in *Arkin 2*. After Defendants canceled that settlement, and the Illinois court decertified the *Arkin 2* settlement class, Defendants produced to Plaintiff's counsel all documents they had produced to Arkin's counsel. Plaintiff's counsel undertook substantial independent review and analysis, engaged in a private mediation with Defendants, conducted subsequent negotiations, and eventually reached the settlement proposed for approval now.

The litigation against Defendants proceeded through written discovery, when Arkin first attempted to settle the claims. In reaching the instant settlement, Plaintiff's counsel reviewed and analyzed the approximately 10,000 documents Defendants produced in *Arkin 1*, as well as the case record for both *Arkin 1* and *Arkin 2*, including statements of counsel. And, Plaintiff's counsel drew on their own extensive knowledge and experience of this area of the law in order to make educated determinations about the strengths and weaknesses of the case and the value of the settlement as compared to the expected value of the case if litigated.

### 2. Likelihood of success on the merits.

The parties agreed to their proposed settlement terms only after weighing of the risks and benefits of further litigation. The TCPA creates a right to sue recover the greater of actual monetary damages or $500 in damages for each unlawful fax, or to obtain an injunction plus damages. If a court finds that the sender willfully or knowingly violated the TCPA, it may increase the award up to three times the amount of damages. Here, each class member who did not opt-out of this proposed settlement and who submitted a timely and valid Proof of Claim will receive a cash payment in the amount of approximately $800.

As discussed above, the class would face significant risks both at the class certification stage and at trial. Even if Plaintiff and the class were to win across the board, a new decision by the Eighth Circuit affirmed a reduction of a large TCPA statutory damages award on due process grounds. *Golan v. FreeEats.com*, 930 F.3d 950 (8th Cir. 2019).

The settlement treats members of the class equitably relative to each other. Each class member who does not opt-out of the Settlement Class and who submits a timely and valid claim form will be mailed a check for approximately $800. This is an excellent outcome and result, especially given the posture of the litigation. Settlement Class members can obtain a significant monetary payment while avoiding the costs and risks associated with further litigation. Without the settlement, they might recover substantially less, if anything at all.

It is uncertain whether the class would be certified or that liability would be established without records establishing which class members received the faxes. *See City Select Auto Sales Inc. v. BMW Bank of North America,* 867 F.3d 434 (3d Cir. 2017). At a minimum, class members would need to submit claim forms, as this settlement required. And, it is possible Defendants would convince the Court to require class members to attest to remembering receiving the faxes in order to claim a share of a judgment.

Because there are no records identifying precisely who received the faxes, it is questionable whether Defendants would ultimately be compelled to pay a sum of $500 times the number of faxes at issue. Indeed, had the case proceeded through litigation, the class certified, and judgment entered, the Third Circuit suggested that an affidavit of receipt of one of those defendants' faxes could be required before a class member receives payment after success on the merits. *City Select*, 867 F.3d at 441-42. Under the settlement, class members can claim a share of the Settlement Fund merely by confirming that they are one of the potential targets of the faxes (*i.e.,* one

or more of their fax numbers was listed in the Class List during the Class Period), without having to remember—or declare—receiving any fax.

The settlement is fair, reasonable, and adequate, considering (a) the risks of trial, the likelihood of an appeal by one or both parties, and the delay additional litigation would cause, in light of (b) the settlement's offer of a substantial payment by submitting a simple claim form that requires no knowledge or memory about the faxes at issue.

3. **The range of possible recovery and the point on which or below the range of recovery is fair.**

The next *Bennett* factors the Court should consider are the range of possible recovery and the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable. These factors are easily combined. The range of possible recovery spans from a finding of non-liability to a varying range of monetary and injunctive relief. In considering the question of a possible recovery, the focus is on the possible recovery at trial. The Court should evaluate the "proposed settlement in its totality." *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 693 (S.D. Fla. 2014), appeal dismissed (Oct. 15, 2014) (citations and quotations omitted).

Here, the settlement payment of $800 is 160% of the TCPA's statutory damages for a single violation. There is no way to know from the records how many faxes any single class member actually received. And this $800 payment is net of attorney's fees, which are not separately provided by the TCPA. Moreover,

Defendants could prevail and the class would get nothing. The range of possible recovery factors weigh in favor of final approval.

### 4. The complexity, expense and likely duration of the litigation.

Class actions have a well-deserved reputation for complexity. *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 315 (N.D. Ga. 1993) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). This case is no exception. Further litigation of this case would require a significant commitment of time and financial resources because Plaintiff expects Defendants would continue to contest Plaintiff's evidence of fax transmissions, and make other arguments against class-wide relief, including whether certain fax templates are advertisements, whether the fax recipients consented to receive the faxes, and whether the faxes sent to class members were sent and received on facsimile machines. The settlement avoids the uncertainty, length of time and high costs associated with continuing this litigation, by offering relief to the class members by returning a simple claim form identifying themselves as members of the class entitled to claim a monetary share of the fund.

### 5. The substance and amount of opposition to the settlement.

Here, no class member filed a timely objection to the settlement, and none opted out. A low rate of opt-outs or opposition reflect favorably on a settlement. *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1020-21 (N.D. Ill. 2001) (high acceptance rate "is strong circumstantial evidence in favor of the settlements"). Arkin and Sawyer opposed preliminary approval, but did not file an objection as required by the Preliminary Approval Order. Doc. 80 (requiring objections by October 19, 2020).

In short, the class members overwhelmingly support the settlement. *See Mangone v. First USA Bank*, 206 F.R.D. 222 (S.D. Ill. Feb. 2, 2001) (low opt-out and objection statistic showed that approximately 99.99% of the class elected to take part in the settlement); *Schlensky v. Dorsey*, 574 F.2d 131, 148 (3d Cir. 1978); *In re SmithKline Beecham Corp. Sec. Litig.*, 751 F. Supp. 525, 530 (E.D. Pa. 1990); *Hispanics United of DuPage County v. Village of Addison, Illinois*, 988 F. Supp. 1130, 1169 (N.D. Ill. 1997) (settlement fair where only a small number of class members objected); *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 163, 175 (S.D.N.Y. 2000) (a small number of objectors is "indicative of the adequacy of the settlement"); *Whitford v. First Nationwide Bank*, 147 F.R.D. 135, 141 (W.D. Ky. 1992) ("small number of objectors is a good indication of the fairness of the settlement"). The lack of any opposition shows a favorable reaction to the settlement that supports final approval.

### 6. The stage of proceedings at which the settlement was achieved.

"The stage of the proceedings at which settlement is achieved is evaluated to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation. Early settlements are favored. Indeed, vast formal discovery need not be taken." *Saccoccio*, 297 F.R.D. at 694 (citations and quotations omitted). Here, the parties engaged in discovery sufficient to know the relevant facts and issues present, and this knowledge and their experience combined to support an informed decision prior to agreeing to the settlement terms. Therefore, the stage of proceedings and amount of discovery support final approval.

### 7. Opinion of Class Counsel and Class Representative.

Courts in the Eleventh Circuit give "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation." *In re Checking Account Overdraft Litig.*, 830 F. Supp. at 1351. Here, Plaintiff and its counsel have concluded that the terms and conditions of this Settlement are fair, reasonable, and adequate. Class Counsel have substantial experience litigating class actions and claims about unsolicited faxes. They have been appointed class counsel in dozens of cases. Doc. 58-15. Under these circumstances, the Court should give weight to Class Counsel's favorable opinions about this settlement.

## II. The Court should approve the attorney's fees and conditionally approve the incentive award sought.

As discussed in Plaintiff's Motion for Attorney's Fees, Expenses, and Conditional Incentive Award (Doc. 83), the attorney's fees sought are fair, reasonable, and consistent with the Eleventh Circuit benchmark. Moreover, the objection period has expired and no class member has objected to the fees. Courts have recognized the lack of objections from members of the class as an important factor in awarding fees. *See, e.g., In re Automotive Refinishing Paint Antitrust Litig.*, 2008 WL 63269, *4 (E.D. Pa. Jan. 3, 2008) ("A lack of objections demonstrate that the Class views the settlement as a success and finds the request for counsel fees to be reasonable.").

In *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983), the U.S. Supreme Court held that negotiated, agreed-upon attorneys' fee provisions, such as the one here, are the "ideal" towards which the parties should strive: "A request for attorneys' fees should not result in a second major litigation. Ideally, of course, litigants will settle

the amount of a fee." In *Malchman v. Davis*, 761 F.2d 893 (2d Cir. 1985), the court concluded that courts should not interfere in fee arrangements between settling class action parties when the defendant has agreed to pay the fees:

> [W]here . . . the amount of the fees is important to the party paying them, as well as the attorney recipient, its seems to the author of this opinion that an agreement 'not to oppose' an application for fees up to a point is essential to completion of the settlement, because the defendants want to know their total maximum exposure and the plaintiffs do not want to be sandbagged. It is difficult to see how this could be left entirely to the courts for determination after the settlement. [761 F.2d at 905 n. 5].

In sum, Class Counsel undertook this case on a contingency basis. They have been litigating TCPA class actions since 2003 and have litigated other types of class actions for many more years. In this litigation, they were able to apply their unique capabilities to achieve an excellent result in a fair and efficient manner. They faced risk of nonpayment, not only for their time, but also for their out-of-pocket costs.

The Court should approve the agreement to pay them attorneys' fees of $1,125,000, plus expenses—including the cost of settlement administration—of $23,176.74 for the reasons stated in the Motion for Attorney's Fees, Expenses, and Conditional Incentive Award (Doc. 83). The Court should not award any fees to Arkin's counsel, for the reasons discussed in Plaintiff's Response to Arkin's Motion for Attorney's Fees. (Doc. 85).

Finally, the Court should set aside $15,000 pending the result of *Johnson* with directions that the money be paid to Plaintiff as an incentive award should *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244 (11th Cir. Sept. 17, 2020), be vacated through the *en banc* review or *certiorari* processes, and paid *pro rata* to the persons who cashed their settlement check in this matter if it is not.

## CONCLUSION

For all these reasons, Plaintiff respectfully requests that the Court approve the

Settlement as fair, reasonable, and adequate, and approve its terms.

Respectfully submitted,

s/ Phillip A. Bock
One of Plaintiff's attorneys

Phillip A. Bock (FL 0093895)
Robert M. Hatch (*pro hac vice*)
Jonathan B. Piper (*pro hac vice*)
BOCK HATCH & OPPENHEIM, LLC
134 N. La Salle Street, Suite 1000
Chicago, IL 60602
Telephone: 312/658-5500

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that, on November 23, 2020, he caused the foregoing to be filed using the Court's CM/ECF system, which automatically serves a copy on all counsel of record.

/s/ Phillip A. Bock